# EXHIBIT K

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on September 15, 2022

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Grand Jury Original |
| | : | CRIMINAL NO. |
| v. | : | VIOLATIONS: |
| CHARLES F. MCGONIGAL, | : | 18 U.S.C. § 1001(a)(1) |
| | : | (Concealment of Material Facts) |
| Defendant. | : | 18 U.S.C. § 1001(a)(2) |
| | : | (False Statements) |
| | : | 18 U.S.C. § 1519 |
| | : | (Falsification of a Record or Document) |

## INDICTMENT

The Grand Jury charges that, on or about the times and dates stated herein:

## GENERAL ALLEGATIONS

At all times material to this Indictment, except as otherwise indicated:

1. The United States Department of Justice was a department within the Executive Branch of the United States government. The Federal Bureau of Investigation ("FBI") was the principal investigative arm of the United States Department of Justice and was a national security organization with both intelligence and law enforcement responsibilities.

2. Defendant CHARLES F. MCGONIGAL was a Special Agent in Charge ("SAC") of the FBI's New York Field Office from October 2016 until his retirement from the FBI on September 14, 2018, and during that time was a member of the Senior Executive Service ("SES"). Defendant McGonigal was responsible for overseeing counterintelligence and national security

1

matters as an SAC, including those involving European countries like Albania and Bosnia and Herzegovina.

3. As a SAC of the FBI's New York Field Office and a member of the SES, defendant McGonigal had a legal duty to file an annual public financial disclosure report pursuant to the Ethics in Government Act of 1978, 5 U.S.C. app. 4 §§ 101, *et seq*. The financial disclosures were made on an Office of Government Ethics ("OGE") Form 278 ("OGE-278"), the purpose of which was to: (a) foster transparency, trust, and confidence in the integrity and decision-making of the Executive Branch; and (b) assist public employees and their agencies in avoiding actual or apparent conflicts of interest between official duties and private financial interests. Filers were required to accurately disclose to the public, among other things, income, assets greater than $1,000, liabilities over $10,000, gifts and travel reimbursements, and other financial transactions. Information provided on the OGE-278 forms could result in employment action being taken against the filer. The OGE-278 forms were submitted electronically and routed to FBI Headquarters in Washington, D.C.

4. Defendant McGonigal had a duty and was required by FBI Policy Directives and FBI policy generally, to report accurately to the FBI any unofficial foreign travel, and any ongoing professional or official contacts with foreign nationals, and he was also required to report accurately official foreign travel to the FBI. The official and unofficial travel disclosures were required to be made on FBI Report of Foreign Travel Forms ("FD-772") and FBI Foreign Travel Debriefing Forms ("FD-772b"), which were submitted electronically and routed to FBI Headquarters in Washington, D.C. The disclosures of contacts with foreign nationals were required to be made on FBI Report of Foreign Contact Forms ("FD-981"). Information provided on the various forms had national security implications and could result in employment action

2

including revocation of security clearances where appropriate.

5. As the holder of a national security clearance, defendant McGonigal was required to report to the FBI accurate and complete information relating to his contacts with foreign officials and his financial assets and liabilities.

6. Person A was a naturalized United States citizen who was born in Albania and who resided in New Jersey. Person A had been an employee of an Albanian intelligence agency several decades earlier.

7. Company A was a Delaware business organization registered by Person A in January 2018.

8. Person B was an Albanian national who was employed by a Chinese energy conglomerate. Person B operated as an informal advisor to the Prime Minister of Albania, retaining an official Albanian government email account and passport, and was a former Albanian senior government official. Person A and Person B were friends and business associates with each other.

9. Person C was a national of Bosnia and Herzegovina and an advisor to a Bosnian Member of the Presidency. Person C was a former Bosnian defense minister.

10. Person D was a national of Bosnia and Herzegovina and was the founder and General Manager of a pharmaceutical company based in Bosnia and Herzegovina.

## COUNT ONE

11. Paragraphs 1 through 10 are incorporated herein.

12. Beginning no later than August 2017, and continuing thereafter until at least May 6, 2019, in the District of Columbia and elsewhere, in a matter within the jurisdiction of the Executive Branch of the Government of the United States, defendant Charles McGonigal did

3

knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device material facts – namely, McGonigal consistently hid aspects of his relationship with Person A that he had a duty to disclose that created an actual and apparent conflict of interest between his official FBI duties, and his private interests including that McGonigal accepted more than $225,000 from Person A; travelled with Person A to Europe; and established ongoing relationships with foreign nationals introduced to him by Person A and Person A's associates.

### Purpose of the Scheme

13. The purpose of the scheme was for defendant McGonigal to conceal from the FBI, and the public, material information that is, the nature of his relationship with Person A, to include the receipt of at least $225,000 from Person A, travel with Person A to Europe, and ongoing relationships with foreign nationals introduced to him by Person A and Person A's associates, which defendant McGonigal was required to report and which created an actual and apparent conflict of interest between defendant McGonigal's official duties and his private financial interests.

### Manner and Means of the Scheme

The scheme was executed through the following manner and means, among others:

14. Between June 2018 and May 2019, defendant McGonigal, on an annual basis, submitted and caused to be submitted OGE-278 forms that falsely stated and certified that defendant McGonigal had no liabilities greater than $10,000, and that failed to identify any assets greater than $1,000 received from Person A, when, as defendant McGonigal knew, he had requested and received no less than $225,000 from Person A that he was required to report on the OGE-278 forms.

15. Between September 2017 and June 2018, defendant McGonigal submitted and

4

caused to be submitted FD-772 and FD-772b forms that falsified, concealed, and covered up his relationship and travel with Person A. That is, contemporaneous with the time period when money was requested and received, defendant McGonigal travelled with Person A to Albania and other countries in Europe on several occasions, and falsely reported the nature and scope of the travel to the FBI on the FD-772 and FD-772b forms, including by: failing to identify Person A as a travel companion, failing to identify countries visited, falsely characterizing the purpose of the travel, and falsely reporting that there would be no reportable foreign contacts on the travel, despite that defendant McGonigal intended to and did meet with foreign nationals, including among others Person B, with whom defendant McGonigal had an ongoing relationship.

16. Between at least August 2017 and September 2018, defendant McGonigal also failed to disclose ongoing contacts with foreign nationals using the FD-981 form as required.

17. Defendant McGonigal engaged in a private financial relationship with Person A that actually or apparently conflicted with his official FBI duties. For instance, among other things, defendant McGonigal caused the FBI-NY to open a criminal investigation of a U.S. citizen in which Person A would serve as a confidential human source, and defendant McGonigal attempted to arrange a meeting between Persons C and D and U.S. government authorities that would benefit Person A financially, all while concealing from the FBI defendant McGonigal's receipt of at least $225,000 from Person A.

### Execution of the Scheme

In furtherance of the scheme to conceal the nature of his relationship with Person A that defendant McGonigal had a duty to disclose, and to accomplish its purpose, defendant McGonigal committed and caused to be committed the following acts, among others:

18. No later than August 2017, defendant McGonigal met with Person A and inquired

5

as to whether Person A could provide money to him.

19. On September 5, 2017, defendant McGonigal submitted an FD-772 form to the FBI for upcoming "unofficial" travel to Albania. The submission improperly failed to: (a) identify that Person A would be a travel companion, (b) state that lodging and accommodations would be provided free of charge and who would be paying for them, (c) state that defendant McGonigal would be traveling to Kosovo in addition to Albania, and (d) identify any anticipated reportable foreign contacts including Person B, or any other foreign national with whom defendant McGonigal had an ongoing relationship.

20. On September 7, 2017, defendant McGonigal met with Person A and discussed that Person A was working on the money and that Person A could provide it to McGonigal little by little.

21. On September 7, 2017, defendant McGonigal traveled by air with Person A from the United States to Albania, where over the next several days they met with Person B and other foreign nationals. Neither McGonigal nor the FBI paid for McGonigal's lodging while in Albania.

22. On September 9, 2017, in Albania, defendant McGonigal met with Person B and the Prime Minister of Albania. At the request of Person A, defendant McGonigal urged the Prime Minister of Albania to be careful about awarding oil field drilling licenses in Albania to Russian front companies. Person A and Person B both had a financial interest in the Government of Albania's decisions about awards of oil field drilling licenses. Defendant McGonigal provided FBI paraphernalia to the Prime Minister of Albania in the presence of Person B.

23. In September 2017, in Albania, defendant McGonigal was introduced by Person A to an Albanian businessperson and politician who told defendant McGonigal that he wanted someone to investigate an alleged plot to kill the Albanian businessperson and politician.

24. On September 10, 2017, defendant McGonigal traveled by car from Albania to Kosovo, along with Person A, and others, where defendant McGonigal met with and provided FBI paraphernalia to a Kosovar politician. Shortly after this trip to Kosovo, defendant McGonigal and Person A, traveling together, returned to the United States.

25. Following his September travel to Albania, defendant McGonigal maintained an ongoing relationship with the Prime Minister of Albania.

26. On October 5, 2017, outside a restaurant, in a parked car in New York City, defendant McGonigal received approximately $80,000 in cash from Person A.

27. In the fall of 2017, at Person A's residence in New Jersey, defendant McGonigal twice more received cash from Person A, in the amounts of approximately $80,000 and $65,000. Defendant McGonigal had indicated to Person A that the money would be paid back.

28. On October 16, 2017, defendant McGonigal submitted an FD-772b regarding his September travel to Albania and Kosovo. The submission improperly failed to disclose that defendant McGonigal had met with the Prime Minister of Albania in Albania and with a Kosovar politician in Kosovo, and falsely denied that defendant McGonigal had disclosed his employment to a foreign national outside of official FBI business.

29. On November 15, 2017, defendant McGonigal submitted an FD-772 for upcoming "official" travel to Austria. The submission improperly failed to: (a) identify that Person A would be a travel companion, (b) identify that any lodging or accommodations would be provided free of charge or who would be paying for them, (c) state that defendant McGonigal would be traveling to Albania in addition to Austria, and (d) identify any anticipated reportable foreign contacts.

30. On November 17, 2017, defendant McGonigal travelled by air to Austria.

31. On November 18, 2017, defendant McGonigal and a Department of Justice

7

prosecutor interviewed the same Albanian businessperson and politician defendant McGonigal had met during his September 2017 trip. Person A attended the interview as an interpreter. No paperwork authorizing or funding interpretation services was submitted by defendant McGonigal to the FBI. The FBI has no official record of the interview.

32. On November 18, 2017, after the interview, defendant McGonigal and Person A traveled by air from Austria to Albania, where they met again with the same Albanian businessperson and politician, this time without the participation of the Department of Justice prosecutor. The Albanian businessperson and politician discussed business opportunities with defendant McGonigal and Person A.

33. On November 19, 2017, defendant McGonigal met with Person B in Albania over dinner and drinks.

34. On November 20, 2017, defendant McGonigal met with the Prime Minister of Albania in Albania.

35. On November 21, 2017, defendant McGonigal travelled by air from Albania to Austria, and then returned to the United States. Neither McGonigal, nor the FBI, paid for McGonigal's lodging while he was in Albania.

36. On November 25, 2017, defendant McGonigal informed the Department of Justice prosecutor referenced above of a potential new criminal investigation involving a U.S. citizen who had registered to perform lobbying work in the United States on behalf of an Albanian political party different from the one in which the Prime Minister was a member. One day earlier, he had received information from Person B about the U.S. citizen lobbyist.

37. In December 2017, McGonigal dined in Washington, D.C. with Person A and Albanian government officials, and dined in New York City with Person A and the Prime Minister

8

of Albania.

38. On January 4, 2018, defendant McGonigal received information about the U.S. citizen lobbyist that originated with Person A, and he forwarded the information to another FBI-NY Special Agent the next day.

39. On January 22, 2018, defendant McGonigal submitted an FD-772b regarding his November travel to Austria referenced above. The submission improperly failed to disclose that defendant McGonigal had travelled to Albania as well as Austria, or that he had met with either Person B or the Prime Minister of Albania, or that he had disclosed his FBI employment to a foreign national outside of official business.

40. On January 22, 2018, defendant McGonigal received information about the U.S. citizen lobbyist from Person A, and he forwarded the information to another FBI-NY official, who was his subordinated employee. Person A had received the information from the Office of the Albanian Prime Minister.

41. From February 21, 2018, through February 24, 2018, defendant McGonigal traveled with Person A to Albania, but he did not report the travel to the FBI as required using the FD-772 or FD-772b forms.

42. On February 26, 2018, the FBI-NY formally opened a criminal investigation focused on the U.S. citizen lobbyist at defendant McGonigal's request and upon his guidance. Person A was later identified by the FBI-NY as a confidential human source supporting the investigation, and Person A provided information to the FBI-NY during the investigation. Person B later helped facilitate a meeting between the FBI-NY and witnesses located in Europe by, among other things, paying for the witness' travel expenses. Defendant McGonigal had not at any time disclosed his financial relationship with Person A to the FBI, nor had defendant McGonigal

disclosed his ongoing contacts with Person B as required using the FD-981 form.

43. On March 4, 2018, defendant McGonigal dined in Washington, D.C., with, among others, Person A, the Prime Minister of Albania, and a former FBI Special Agent who was working at an international professional services firm.

44. From April 26, 2018, through May 2, 2018, defendant McGonigal travelled with Person A to Europe, including Albania, but did not report the travel to the FBI as required using the FD-772 or FD-772b forms.

45. On April 27, 2018, defendant McGonigal met with Person C and Person D in Germany. In the meeting, Person C and Person D requested an opportunity to meet with the U.S. Ambassador to the United Nations or another high-level U.S. government official to request United States support for a political purpose that would impact the region of Bosnia and Herzegovina.

46. On May 8, 2018, defendant McGonigal communicated with the FBI's liaison to the United Nations and requested assistance in arranging the meeting that Person C and Person D had requested.

47. On June 10, 2018, defendant McGonigal submitted an OGE-278 form that improperly failed to include any information about the approximately $225,000 that he had received from Person A.

48. On June 25, 2018, defendant McGonigal proposed to Person A that Person A and Company A enter into a contractual relationship with Person D and Person D's pharmaceutical company. Defendant McGonigal's proposal included that Company A would be paid $500,000 by Person D and Person D's pharmaceutical company in exchange for the scheduling of a meeting between Person D's pharmaceutical company and a representative from the U.S. delegation to the United Nations.

49. On July 1, 2018, defendant McGonigal confirmed to Person A by electronic communication that he had re-sent the same proposed contractual language described above, and defendant McGonigal asked Person A to "protect [defendant McGonigal's] name."

50. On July 18, 2018, as proposed by defendant McGonigal, Person A proposed the contractual arrangement to Person D in which Company A would receive $500,000 in exchange for the scheduling of a meeting between Person D's pharmaceutical company and a representative from the U.S. delegation to the United Nations.

51. On July 26, 2018, defendant McGonigal provided to the FBI's liaison to the United Nations proposed dates for the meeting that Person C and Person D had requested.

52. On August 13, 2018, defendant McGonigal attended a meeting where he provided information to a senior official from the U.S. delegation to the United Nations about the request made by Person C and Person D for a meeting. Defendant McGonigal did not at any point share information about Person A's financial interest in the meeting, or about defendant McGonigal's financial relationship with Person A.

53. Between August 2017 and defendant McGonigal's retirement from the FBI in or around September 2018, defendant McGonigal did not report any ongoing professional or official contacts with foreign nationals to the FBI as required using the FD-981 forms.

54. On May 6, 2019, around nine months after his retirement from the FBI, defendant McGonigal submitted an OGE-278 form that improperly failed to include any information about the approximately $225,000 that he had received from Person A either as an asset or liability.

(**Concealment of Material Facts**, in violation of Title 18, United States Code, Section 1001(a)(1))

## COUNT TWO

55. Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

11

56.     On September 5, 2017, in the District of Columbia and elsewhere, defendant Charles McGonigal did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the Government of the United States, namely the FBI, in that defendant McGonigal falsely stated and represented on an FD-772 form that, for upcoming travel to Europe, he had no travel companions, would not be provided lodging and accommodations free of charge, would be traveling only to Albania, and did not anticipate any reportable foreign contacts, when, in truth and fact, as defendant McGonigal then well knew and believed, defendant McGonigal would be accompanied by Person A, would receive free lodging and accommodations, would travel to Kosovo in addition to Albania, and would have reportable foreign contact with Person B and others.

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT THREE

57.     Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

58.     On October 16, 2017, in the District of Columbia and elsewhere, defendant Charles McGonigal did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the Government of the United States, namely the FBI, in that defendant McGonigal falsely stated and represented on an FD-772b form that, for travel to Europe the prior month, he had no contact with a representative of a foreign government outside of official FBI business, and did not disclose his employment to any foreign national outside of official FBI business, when, in truth and fact, as defendant McGonigal then well knew and believed, defendant McGonigal had

met with the Prime Minister of Albania and with a Kosovar politician and with Person B, and disclosed his employment to them, outside of official FBI business.

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT FOUR

59. Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

60. On November 15, 2017, in the District of Columbia and elsewhere, defendant Charles McGonigal did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the Government of the United States, namely the FBI, in that defendant McGonigal falsely stated and represented on an FD-772 form that, for upcoming travel to Europe, he had no travel companions, would not be provided lodging and accommodations free of charge, would be traveling only to Austria, and did not anticipate any reportable foreign contacts, when, in truth and fact, as defendant McGonigal then well knew and believed, defendant McGonigal would be accompanied by Person A, would receive free lodging and accommodations, would travel to Albania in addition to Austria, and would have reportable foreign contact with Person B and others.

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT FIVE

61. Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

62. On January 22, 2018, in the District of Columbia and elsewhere, defendant Charles McGonigal did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the Government of the United States, namely the FBI, in that defendant McGonigal

falsely stated and represented on an FD-772b form that, for travel to Europe two months earlier, he had travelled only to Austria, had no contact with a representative of a foreign government outside of official FBI business, and did not disclose his employment to any foreign national outside of official FBI business, when, in truth and fact, as defendant McGonigal then well knew and believed, defendant McGonigal had travelled to Albania in addition to Austria, had met with the Prime Minister of Albania and also met with Person B, and had disclosed his employment to them, outside of official FBI business.

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT SIX

63. Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

64. On June 10, 2018, in the District of Columbia and elsewhere, defendant Charles McGonigal did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive Branch of the Government of the United States, namely the FBI and the OGE, in that defendant McGonigal falsely stated and represented on an OGE-278 form that he had no liabilities greater than $10,000, and failed to disclose assets and liabilities received from Person A, when, in truth and fact, as defendant McGonigal then well knew and believed, defendant McGonigal had received approximately $225,000 from Person A.

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT SEVEN

65. Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

66. On May 6, 2019, in the District of Columbia and elsewhere, defendant Charles McGonigal did willfully and knowingly make and cause to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Executive

14

Branch of the Government of the United States, namely the FBI and the OGE, in that defendant McGonigal falsely stated and represented on an OGE-278 form that he had no liabilities greater than $10,000, and failed to disclose assets and liabilities received from Person A, when, in truth and fact, as defendant McGonigal then well knew and believed, defendant McGonigal had received approximately $225,000 from Person A.

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(2))

## COUNT EIGHT

67. Paragraphs 1 rough 10 and 14 through 54 are incorporated herein.

68. On June 10, 2018, in the District of Columbia and elsewhere, defendant Charles McGonigal, with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States, knowingly concealed, covered up, falsified, and made false entries in a record, document, and tangible object, to wit, defendant McGonigal submitted and caused to be submitted an OGE-278 form with the FBI and the OGE, which falsely failed to report assets greater than $1,000 and liabilities greater than $10,000, when, as defendant McGonigal then well knew and believed, defendant McGonigal had received approximately $225,000 from Person A.

(**Falsification of a Record or Document**, in violation of Title 18, United States Code, Section 1519)

## COUNT NINE

69. Paragraphs 1 through 10 and 14 through 54 are incorporated herein.

70. On May 6, 2019, in the District of Columbia and elsewhere, defendant Charles McGonigal, with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of a matter within the jurisdiction of a department or agency of the United States, knowingly concealed, covered up, falsified, and made false entries

in a record, document, and tangible object, to wit, defendant McGonigal submitted and caused to be submitted an OGE-278 form with the FBI and the OGE, which falsely failed to report assets greater than $1,000 and liabilities greater than $10,000, when, as defendant McGonigal then well knew and believed, defendant McGonigal had received approximately $225,000 from Person A.

(**Falsification of a Record or Document**, in violation of Title 18, United States Code, Section 1519)

A TRUE BILL:

FOREPERSON

_Matthew M. Graves/jpl_
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA